## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RUTH REYNOLDS, | ) |
| | ) |
| | ) |
| *Plaintiff,* | )    Case No.  1:23-CV-300 |
| | ) |
| vs. | ) |
| | ) |
| UNITED ERIE, A DIVISION OF | ) |
| INTERSTATE CHEMICAL COMPANY, | ) |
| INC., | ) |
| | ) |
| *Defendant.* | )    **JURY TRIAL DEMANDED** |
| | ) |

### COMPLAINT IN CIVIL ACTION

Plaintiff, Ruth Reynolds, (hereinafter, "Plaintiff") by and through the undersigned counsel, now files this Complaint in Civil Action (hereinafter, the "Complaint") against United Erie, a division of Interstate Chemical Company, Inc., (hereinafter, "Defendant") averring as follows:

### PARTIES

1.      Plaintiff is an adult individual who resides at 10763 Cross Station Road, Girard, Pennsylvania 16417.  At all times relevant, Plaintiff was a "qualified individual with a disability" within the purview of the Americans with Disabilities Act of 1990, as amended by the Americans with Disabilities Act Amendments of 2008, 42 U.S.C. § 1201, *et seq.* (hereinafter, and collectively, the "ADA") and the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.* (the "PHRA).

2.      The ADA defines the term "disability" as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3)).  42 U.S.C. § 12102.

3.      Plaintiff was diagnosed with a condition that qualifies as a "disability" pursuant to 42 U.S.C. § 12102(A) prior to her employment with Defendant.  Plaintiff was diagnosed with (i) General Anxiety Disorder, which occasionally culminates into acute anxiety/panic attacks; and (ii) severe migraine headaches (collectively, the "Condition").  At all times material, the Condition impaired Plaintiff's major life activities including Plaintiff's physical locomotion, working, pursuing personal hobbies and fulfillment, eating, sleeping, and concentrating.

4.      Plaintiff's Condition qualifies as a "disability" pursuant to the PHRA.  The PHRA defines a "disability" to include an "actual mental or physical impairment that substantially limits one or more major life activities." *Sowell v. Kelly Servs., Inc.*, 139 F. Supp. 3d 684, 704 (E.D. Pa. 2015) quoting *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266,274 (3d Cir. 2012).[1]

5.      Defendant is a Pennsylvania business corporation with a registered address of 2797 Freedland Road, Hermitage, Mercer County, Pennsylvania 16148.  Additionally, Defendant has business operations located at 1432 Chestnut Street, Erie, Pennsylvania 16502 (hereinafter, the "Erie Facility").  Defendant employs over 50 employees at the Erie Facility.  Accordingly, otherwise qualifying employees are eligible to exercise their rights (and the Defendant is required to honor such rights) under the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601-2654 (hereinafter, "FMLA").

---

[1] The Pennsylvania legislature has not revised the PHRA to address that Congress substantially broadened the definition of a "disability" to the "maximum extent permitted by the terms" of the ADA.  *Ostrowski v. Con-way Freight, Inc.*, 543 F. App'x 128, 131 (3d Cir. 2013).  These amendments became effective on January 1, 2009, and as such, the PHRA's definition of a "disability" differs from that provided by the ADA.  *See McDonald v. Pa. State Police*, 532 F. App'x 176, 177 (3d Cir. 2013) and *Sowell*, 139 F. Supp. 3d 684 at 704 (E.D. Pa. 2015).  In all other respects, the ADA and the PHRA are interpreted consistently and utilize the same standards for determining liability. *Oden v. Se. Pa. Transp. Auth.*, 671 F. App'x 859, 863 (3d Cir. 2016) citing *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 274 (3d Cir. 2012).

## JURISDICTION AND VENUE

**A.      This Court Possesses Subject Matter Jurisdiction Pursuant to 28 U.S.C. § 1331 and Supplemental Jurisdiction Pursuant to 28 U.S.C. § 1367.**

6.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 ("Federal Question Jurisdiction") as Plaintiff is advancing claims under the FMLA and the ADA (collectively, Plaintiff's claims arising under the FMLA and the ADA are identified as the "Federal Law Claims").

7.      Plaintiff is also advancing claims under the PHRA (the "State Law Claims").  This Court may exercise supplemental jurisdiction over the State Law Claims pursuant to 28 U.S.C. § 1367(a) as the Federal Law Claims and the State Law Claims share operative facts that support the corresponding causes of action.  Further, the operative facts between the Federal Law Claims and the State Law Claims mirror one another to such a degree that they form the "same case or controversy" under Article III § 2 of the United State Constitution, which further supports this Court's exercise of supplemental jurisdiction over the State Law Claims.

**B.      The United States District Court for the Western District of Pennsylvania is the Appropriate Venue for this Matter Pursuant to 28 U.S.C. § 1391(b).**

8.      Venue is proper in the United States District Court for the Western District of Pennsylvania, Erie Division (the "Western District") as a substantial part of the events and omissions giving rise to the Federal Law Claims and State Law Claims occurred within this judicial district.  Specifically, these events and omissions occurred within Erie County, Pennsylvania, which is one of the counties encompassed by the Western District.  This matter is properly before the Erie Division of the Western District given the conduct complained of herein arose in Erie County, Pennsylvania, and conduct arising within Erie County is docketed within the Erie Division of the Western District pursuant to LCvR 3.

**C.     This Court May Exercise Personal Jurisdiction Over Defendant.**

9.     This Court may exercise personal jurisdiction over Defendant pursuant to 42 Pa. C.S. § 5301(a)(2), and this Court may exercise general jurisdiction over Defendant in compliance with the Due Process Clause of the United States Constitution.

10.     Specifically, 42 Pa. C.S. § 5301 states "the existence of any of the following relationships between a person and this Commonwealth shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such person." 42 Pa. C.S. § 5301(a). This definition is expanded to "corporations" pursuant to 42 Pa. C.S. § 5301(a)(2) which provides:

> Corporations.--
> (i) Incorporation under or qualification as a foreign corporation under the laws of this Commonwealth.
> (ii) Consent, to the extent authorized by the consent.
> (iii) The carrying on of a continuous and systematic part of its general business within this Commonwealth.

11.     As discussed above, Defendant is a domestic corporation, incorporated under the laws of the Commonwealth of Pennsylvania. Therefore, general jurisdiction over Defendant is proper pursuant to 42 Pa. C.S. § 5301(a)(2) and Defendant may properly be pursued before this Court.

**D.     Plaintiff has exhausted its administrative remedies and the Federal Law Claims and the State Law Claims are now properly able to be brought before this Court.**

12.     Plaintiff has satisfied all procedural and administrative prerequisites under 29 U.S.C. § 626, 42 U.S.C. § 2000e-5, and 43 P.S. § 959 and now may proceed to bring this action before the Court. Specifically:

> a.     On or about November 1, 2022, Plaintiff dual filed a charge of discrimination seeking redress for the Federal Law Claims and the State Law Claims with the

Equal Employment Opportunity Commission (the "<u>EEOC</u>") at charge number 533-2023-00252 (the "<u>EEOC Charge</u>") and with the Pennsylvania Human Relations Commission (the "<u>PHRC</u>").

b. On July 27, 2023, the EEOC issued Plaintiff the Notice of Right to Sue (the "<u>NRTS</u>") wherein Plaintiff was afforded 90 days within which to timely file the Federal Law Claims and the State Law Claims. A true and correct copy of the NRTS is attached hereto, made a part hereof, and identified as **Exhibit A**. The instant Complaint is filed within the 90-day time period.

## <u>PROCEDURAL HISTORY AND FACTUAL ALLEGATIONS</u>

13. On or about July 31, 2001, Plaintiff commenced her employment with Defendant in the role of "Customer Service Representative," and then in her tenure later served as "Office Manager," (the "<u>Position</u>") until she was terminated from her employment on June 24, 2022.

14. Within her role as Office Manager, Plaintiff, *inter alia*, oversaw two to three "Customer Service Representatives," produced advertisements, reviewed resumes, processed orders from customers, and conducted payroll operations. Plaintiff was compensated at an hourly basis of $25.00 per hour at the time of her termination.

15. In 2019, Plaintiff experienced a profound anxiety attack, a natural occurrence given the Condition. Plaintiff informed Defendant of her current medical issue and explained that she suffered from the Condition.

16. Contemporaneous with this notification, Plaintiff informed Defendant that she would be invoking her rights under FMLA and would be taking a leave of absence from her employment under FMLA to receive treatment for her Condition (the "<u>2019 Leave</u>").

17.     Plaintiff was qualified to invoke her FMLA rights and the 2019 Leave, as at that time she had worked for Defendant for at least 12 months; she had worked at least 1,250 hours for Defendant over the past 12 months, and the Condition qualified as a "serious health condition that prevented her from performing the essential functions of her job." Per the FMLA and Defendant's policies, Plaintiff was entitled to take up to 12 weeks of leave during which time her Position would be protected for her to return to following said leave.

18.     While Defendant acknowledged Plaintiff's FMLA rights, Defendant, almost contemporaneous with the notification of the invocation of the FMLA rights, issued a written reprimand to Plaintiff in regard to "violation of the leave policy" and informed her that any other leave that she would seek could be grounds for termination.

19.     Within 12 weeks and in 2019, Plaintiff returned to work from the 2019 Leave.

20.     In approximately late March of 2020, when the COVID-19 pandemic became prevalent, Plaintiff requested an accommodation to allow her to complete the essential functions of her Position from her home. Defendant denied this request and required Plaintiff to be physically present at the Erie Facility throughout the COVID-19 pandemic.

21.     Subsequent to the above, and later in 2020, symptoms of the Condition acutely manifested once again, and Plaintiff needed to take leave to receive proper treatment. Plaintiff accordingly informed Defendant that she would be invoking her rights under FMLA (the "2020 Leave").

22.     Plaintiff was qualified to invoke her FMLA rights and the 2020 Leave, as at that time she had worked for Defendant for at least 12 months; she had worked at least 1,250 hours for Defendant over the past 12 months, and her Condition qualified as a "serious health condition that prevented her from performing the essential functions of her job." Per the FMLA and Defendant's

policies, Plaintiff was entitled to take up to 12 weeks of leave during which time her Position would be protected for her to return to following said leave.

23.     Within several weeks, and still in 2020, Plaintiff returned from the 2020 Leave and resumed her full-time employment.

24.     In 2021, symptoms of the Condition acutely manifested once again, wherein Plaintiff requested a brief period of leave to appropriately address and recuperate from the acute symptoms of the Condition (the "2021 Leave").

25.     Contemporaneous with this notification, Plaintiff informed Defendant that she would be invoking her rights under FMLA and would be taking a leave of absence from her employment under FMLA to receive treatment for the Condition.

26.     Plaintiff was qualified to invoke her FMLA rights and the 2021 Leave, as at that time she had worked for Defendant for at least 12 months; she had worked at least 1,250 hours for Defendant over the past 12 months, and her Condition qualified as a "serious health condition that prevented her from performing the essential functions of her job." Per the FMLA and Defendant's policies, Plaintiff was entitled to take up to 12 weeks of leave during which time her Position would be protected for her to return to following said leave.

27.     Upon returning to work from the 2021 Leave, Defendant issued Plaintiff a second written reprimand related to "taking time off from work." The only time Plaintiff had recently taken off time from work was covered by the FMLA.

28.     Defendant permitted employees similarly situated to Plaintiff who were not disabled to regularly work from home and in a remote fashion. The employees not only did not have to take leave to do their jobs in lieu of utilizing leave under the FMLA or otherwise, but they were also paid their regular wages and were in no way compromised as a result.

29.    In early 2022, due to an exacerbation of her Condition, Plaintiff attempted to commit suicide and resorted to the consumption of alcohol in an attempt to alleviate the symptoms of the Condition which further exacerbated the Condition.

30.    In May 2022, Plaintiff informed Defendant that she would be enrolling in a rehabilitation program at a facility in the State of Florida (the "Rehabilitation Center") and proceeded to do so for treatment of the Condition on May 10, 2022.

31.    Contemporaneous with enrolling in the program at the Rehabilitation Center, Plaintiff informed Defendant that she would be invoking her rights under FMLA and would be taking leave of absence from her employment under FMLA to receive treatment for her Condition (the "2022 Leave").

32.    Plaintiff was qualified to invoke her FMLA rights and the 2022 Leave, as at that time she had worked for Defendant for at least 12 months; she had worked at least 1,250 hours for Defendant over the past 12 months, and her Condition qualified as a "serious health condition that prevented her from performing the essential functions of her job." Per the FMLA and Defendant's policies, Plaintiff was entitled to take up to 12 weeks of leave during which time her Position would be protected for her to return to following said leave.

33.    On June 28, 2022, Plaintiff was discharged from the Rehabilitation Center and was provided with a letter from the Rehabilitation Center stating that she could return to work on July 5, 2022.

34.    Upon Plaintiff's return to her residence in Erie, Pennsylvania, she received and opened a letter from Defendant, dated June 27, 2022, which stated that she was terminated for "not attending work at a time where she had exhausted all leave." A true and correct copy of the June 27, 2022 letter is attached hereto as **Exhibit B**.

<u>COUNT I</u>
**DISCRIMINATORY TERMINATION IN**
**VIOLATION OF THE ADA AND THE PHRA**
**42 U.S.C. § 1201,** *et seq.;* **43 Pa. Cons. Stat. § 951,** *et seq.*

35.     Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

36.     The ADA was enacted in 1990 in an effort to provide a national mandate designed to eliminate discrimination against qualified individuals living with disabilities.  42 U.S.C. § 12101.  Accordingly, the ADA provides that no employer shall discriminate against an individual on the basis of their disability with regard to the terms, conditions, and privileges of employment. *See* 42 U.S.C. § 12112(a).

37.     To establish a *prima facie* case of discrimination under the ADA, a plaintiff must show that: (1) they are a disabled person within the meaning of the ADA; (2) the disabled person is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) the disabled person suffered an otherwise adverse employment decision as a result of discrimination.  *McGlone v. Philadelphia Gas Works*, 17-1399, 2018 WL 2193658, at *2 (3d Cir., filed May 14, 2018) (citing *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998)).

**A.     Plaintiff is a "disabled person" pursuant to 42 U.S.C. § 12102 of the ADA.**

38.     A person with a disability is someone who (i) has a physical or mental impairment that substantially limits one or more major life activities; (ii) has a history or record of such an impairment; and (iii) is perceived by others as having such an impairment.  42 U.S.C. 12102(1).

39.     As established herein, Plaintiff is a "disabled person" for purposes of establishing her *prima facie* case under the ADA, given the numerous ways in which the Condition substantially impaired her major life activities, including but not limited to physical locomotion, working,

pursuing personal hobbies and fulfillment, eating, sleeping, and concentrating.  Accordingly, Plaintiff is a "disabled person" within the meaning of the ADA.

**B.      Plaintiff is a "qualified individual" pursuant to 42 U.S.C. § 12111 of the ADA and was qualified to perform the essential functions of her job with or without reasonable accommodations.**

40.      At all times material, Plaintiff was qualified to perform the essential functions of the Position.  The ADA provides that a "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).  To meet this definition, Plaintiff must show she possesses "the requisite skill, experience, education and other job-related requirements of the employment position" and that she "can perform the essential functions of the position with or without reasonable accommodations."  *Skerski v. Time Warner Cable Co.*, 257 F.3d 273, 278 (3d Cir. 2001) citing *Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 145 (3d Cir.1998).

41.      Plaintiff possessed and exercised the skill, experience, and ability needed to perform the essential functions of the Position.  Specifically, Plaintiff was sufficiently skilled in the areas of personnel management, intellectual cognition, clerical duties, comprehension, communication, and general accounting.  Moreover, Plaintiff was employed by Defendant for over 20 years and received several pay raises and earned a promotion from Customer Service Representative to Office Manager during her tenure of employment.  Further, during her employment, Plaintiff performed her assignments without a single issue or complaint levied against her.

42.      In other words, Defendant ratified the fact that Plaintiff was qualified to perform the essential functions of the Position, and clearly Plaintiff meets the definition of a "qualified individual" under the ADA.

**C.     Plaintiff suffered an "adverse employment action" as a result of discrimination.**

43.     "It is well settled that termination is an adverse employment action." *Dreibelbis v. Cnty. Of Berks*, 438 F. Supp. 3d 304, 315 (E.D. Pa. 20202) (internal citation omitted).

44.     Defendant terminated Plaintiff and clearly did so as a result of discrimination against Plaintiff based upon the Condition.  First, Defendant terminated Plaintiff while she was on leave to treat her condition, pursuant to her established FMLA rights.  Second, the timing between the invocation of leave and the time of the termination was non-existent, showing that Defendant wanted to terminate Plaintiff (who was "missing work") the first chance they received (so presumably they could place an employee who was "more available" and "less likely to take leave" in such a position).  Third, Defendant terminated Plaintiff immediately upon having a "perceived" chance because they wanted to bring in a worker who didn't suffer from the Condition.

45.      As a natural corollary to these facts, it is readily inferable that Defendant discharged Plaintiff because of her Condition in violation of the ADA.

46.     Such an inference is bolstered by the disparate treatment that Defendant displayed toward Plaintiff and her non-disabled coworkers.  While Defendant permitted the latter to work from home and receive wages during COVID-19 when they were experiencing illness, Defendant required the former (Plaintiff) to use unpaid FMLA leave when she was experiencing the adverse effects of the Condition.

47.     The animosity that Defendant possessed with respect to Plaintiff's Condition is further evidenced by the fact that Defendant issued Plaintiff two written reprimands, along with threats of termination, for nonattendance at work because she invoked the FMLA and used leave time to recuperate from her Disabilities.

**D.     Plaintiff is entitled to pursue punitive damages as Defendant discriminated**

**against her with malice and reckless indifference to her federally protected rights.**

48.    A plaintiff may recover punitive damages where she can demonstrate a defendant "engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." *Godwin v. George Washington, LP*, No. 22-1066, 2022 BL 467663, at *3 (W.D. Pa. Dec. 30, 2022) citing 42 U.S.C. § 1981(a)(b)(1).  The terms "malice" and "reckless indifference" pertain specifically to the defendant's knowledge that it acted in violation of federal law rather than an awareness of engaging in "discrimination." *Id.* citing *Kolstad v. American Dental Ass'n*, 527 U.S. 526 , 535 (1999).

49.    At all times material, Defendant acted with the knowledge that it was lawfully required to provide a workplace free of discrimination to individuals like Plaintiff who were statutorily protected by the ADA.  In terminating Plaintiff, Defendant acted both with malice and reckless indifference to Plaintiff's federally protected rights, and Defendant's actions warrant Plaintiff's recovery of punitive damages pursuant to 42 U.S.C. § 1981(a)(b)(1).

50.    As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses she suffered and will continue to suffer.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## COUNT II
### RETALIATION IN VIOLATION OF THE FMLA
### 29 U.S.C. § 2601, *et seq.*

51.     Plaintiff incorporates the allegations contained in the paragraphs set forth above, as if fully set forth at length herein.

52.     The FMLA was passed in 1993 in an attempt to "balance the demands of the workplace with the needs of the families."  29 U.S.C. § 2601(b)(1).  In an effort to ensure employees may avail themselves of the rights enshrined within the FMLA, an employer may not "interfere with, restrain, or deny the exercise of or attempt to exercise these [FMLA] rights."  29 U.S.C. § 2615(a)(1).  Further, the FMLA provides that it is "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."  29 U.S.C. § 2615(a)(2).

53.     These provisions have been interpreted, by the Department of Labor, to ensure that leave pursuant to the FMLA is not considered a "negative factor in employment actions such as hiring, promotions, or disciplinary actions."  *See* 29 C.F.R. § 825.220(c).  Further, these provisions are the catalyst for claims arising for "interference" and/or "retaliation" in connection with the exercise of an employee's FMLA rights.  *See Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 508 (3d Cir. 2009).

54.     To establish a claim of FMLA retaliation claim under 29 U.S.C. § 2615(a)(2), a plaintiff must show that: (1) they invoked their right to FMLA-qualifying leave, (2) they suffered an adverse employment decision, and (3) the adverse action was causally related to their invocation of FMLA rights.  *Ross v. Gilhuly*, 755 F.3d 185, 193 (3d Cir. 2014).

**A.     Plaintiff invoked her right to FMLA-qualifying leave.**

55.    Plaintiff invoked her FMLA rights in taking the 2019 Leave, the 2020 Leave, the 2021 Leave, and the 2022 Leave.

**B.    Plaintiff suffered adverse employment decisions.**

56.    Shortly after Plaintiff invoked the 2019 Leave, Defendant issued her a written reprimand and threatened that any future leave would constitute grounds for termination.

57.    Shortly after Plaintiff invoked the 2021 Leave, Defendant issued her a written reprimand and, once again, threatened that any future leave (presumably including FMLA leave) would constitute grounds for termination.

58.    When Plaintiff invoked the 2022 Leave, before the FMLA leave period expired and consistent with the Defendant's previous warning, Defendant terminated Plaintiff's employment.

**C.    Defendant's adverse actions were causally related to Plaintiff's invocation of her rights.**

59.    Ultimately, these adverse employment actions, individually and/or collectively, establish a sufficient causal nexus between Plaintiff's exercise of her statutory rights to FMLA leave and retaliatory discrimination on the part of Defendant because she had exercised those rights.

60.    Therefore, Defendant violated the rights afforded to Plaintiff under the FMLA and her right to not be retaliated against for invoking her FMLA rights.

61.    As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses she suffered and will continue to suffer.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## COUNT III
## INTERFERENCE WITH RIGHTS IN VIOLATION OF THE FMLA
### 29 U.S.C. § 2601, *et seq.*

62.    Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

63.    As stated above, an employer may not "interfere" with an employee's exercise of their statutory rights enumerated within the FMLA.  *See Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 508 (3d Cir. 2009).  The Third Circuit has further held that "firing an employee for a valid quest for FMLA leave may constitute interference with the employee's FMLA rights as well as retaliation against the employee." *Id.* at 509.

64.    To make a claim of interference under the FMLA, a plaintiff must establish that: (1) the plaintiff was entitled to FMLA leave; (2) the plaintiff gave notice to the defendant of their intention to take FMLA leave; and (3) the plaintiff was denied benefits to which they were entitled under the FMLA.  *See Ross*, 755 F.3d at 191-92.

**A.    Plaintiff was entitled to FMLA leave.**

65.    Plaintiff was entitled to take the 2022 Leave and notified Defendant in May of 2022 of her imminent enrollment in the program at the Rehabilitation Center and of her invocation of her FMLA leave rights.

66.    Plaintiff was qualified to invoke her FMLA rights to take the 2022 Leave, as at that time she had worked for Defendant for at least 12 months; she had worked at least 1,250 hours for Defendant over the past 12 months, and her Condition qualified as a "serious health condition that prevented her from performing the essential functions of her job."  Per the FMLA and Defendant's

policies, Plaintiff was entitled to take up to 12 weeks of leave during which time her Position would be protected for her to return to following said leave.

**B.  Plaintiff gave notice to Defendant of her intention to take FMLA leave.**

67.    As set forth herein, Plaintiff provided Defendant with notice of the invocation of the 2022 Leave.

**C.  Plaintiff was denied benefits to which she was entitled under the FMLA.**

68.    Incongruously, Defendant terminated Plaintiff within the 12-week period for which she sought the 2022 Leave as the leave began in early May 2022 and Plaintiff was terminated effective June 24, 2022.

69.    In denying Plaintiff leave time pursuant to the FMLA and terminating her during her protected leave period, Defendant contravened the statutory commands and the inherent purpose of the FMLA.

70.    As a direct and proximate result of Defendant's conduct described hereinabove, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses she suffered and will continue to suffer.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## <u>REQUEST FOR RELIEF</u>

Plaintiff, Ruth Reynolds, respectfully requests this Honorable Court to enter judgment in her favor, and against Defendant, United Erie, a Division of Interstate Chemical Company, Inc., and prays for relief as follows:

1.      Declare and find that Defendant committed one or more of the following acts:

      i.      Violated the ADA and/or the PHRA in terminating Plaintiff on the basis of her Condition;

      ii.     Violated the FMLA in retaliating against Plaintiff with adverse employment actions because she invoked her rights under the FMLA;

      iii.    Violated the FMLA in unlawfully interfering with Plaintiff in the exercise of her rights pursuant to the FMLA;

      iv.     Acted with malice and/or reckless indifference to Plaintiff with regard to her federally protected rights under the ADA; and

      v.      Acted willfully and/or in reckless disregard to Plaintiff's federally protected rights under the FMLA.

2.      Award compensatory damages, including but not limited to past and future pecuniary and non-pecuniary losses, including suffering, mental anguish, inconvenience, and loss of enjoyment of life;

3.      Award punitive damages to Plaintiff in an amount to be determined by a factfinder and in an amount sufficient to deter Defendant from engaging in future conduct of a similar nature;

4.      Award liquidated damages to Plaintiff in an amount to be determined by a factfinder;

5.      Award equitable relief in form of back pay and front pay;

6.      Award Plaintiff reasonable attorney's fees and costs;

7.      Award pre-judgment and continuing interest as calculated by the Court; and

8.    Award such other and further relief as this Court deems just, equitable, and proper.

Respectfully submitted,

**THE WORKERS' RIGHTS LAW GROUP, LLP**

Date: October 25, 2023                    By: */s/ Kyle H. Steenland*
                                           Kyle H. Steenland (Pa. I.D. 327786)

                                           The Workers' Rights Law Group, LLP
                                           Foster Plaza 10
                                           680 Andersen Drive, Suite 230
                                           Pittsburgh, PA 15220
                                           Telephone: 412.910.9592
                                           Fax: 412.910.7510
                                           kyle@workersrightslawgroup.com

                                           *Counsel for Plaintiff, Ruth Reynolds*

## <u>VERIFICATION</u>

I, Ruth Reynolds, have read the foregoing allegations in the foregoing Complaint in Civil

Action and verify that the statements therein are correct to the best of my personal knowledge,

information and/or belief.  I understand that this verification is made subject to the penalties of 18

Pa. C.S. § 4904, relating to unsworn falsification to authorities, which provides that if I knowingly

make false averments, I may be subject to criminal penalties.


Dated: October 25, 2023

_____
Ruth Reynolds